1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>WILLIAM LEE,<br><br>Defendant | CASE NO. 1:16-CR-00069-AWI-SKO-10<br><br>ORDER ON MOTION FOR<br>COMPASSIONATE RELEASE<br><br>(Doc. No. 885) |

16    Defendant William Lee ("Lee" or "Defendant") pleaded guilty to a violent crime in aid of

17  racketeering (VICAR) under 18 U.S.C. § 1959 in 2018 and is currently serving a 120-month

18  sentence in the custody of the Federal Bureau of Prisons ("BOP"). He now brings a motion for

19  compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that has elevated

20  COVID-19 risk due to hypertension, obesity, kidney disease and breathing issues. For the reasons

21  set forth below, the Court will deny the motion.

22                                            **BACKGROUND**

23    On June 18, 2018, Lee pleaded guilty to a single VICAR count under 18 U.S.C.§ 1959,

24   Dkt. No. 621, and on October 31, 2018, he was sentenced to a term of 120 months in federal

25  prison, followed by a 36-month term of supervised release, plus a $100 special assessment. Dkt.

26  No. 750.

27    Lee is currently serving that term at the BOP's FCI Lompoc facility. Dkt. No. 885 at 2:2;

28  Dkt. No. 885-6 ¶ 1. His scheduled statutory release date is October 28, 2024, factoring in his Good

1  Conduct Time (GCT) credit. Dkt. No. 885-1. At the time the instant motion was filed, Lee had

2  served 66 months—or approximately 55%—his 120-month sentence. See id.

3      Lee is 43 years old and BOP medical records show he is being treated for a number of

4  conditions, including hypertension, kidney disease, hyperlipidemiaand obesity. Dkt. No. 885-4 at

5  3, 7, 9 (Filed Under Seal). BOP medical records also indicate that Lee tested positive for and

6  recovered from COVID-19 in May 2020. Id. at 2-3; see also, Dkt. 885-6 at 5.

7                              **DEFENDANT'S MOTION**

8  *Defendant's Arguments*

9      Lee argues that the Court should reduce his sentence to time served because "his chances

10  of becoming infected again in prison are greatly increased compared to being in the community

11  where he would be able to practice social distancing and better care for himself," Doc. 885 at

12  4:27-5:3, and because his "hypertension, obesity and breathing issues make him especially

13  vulnerable to COVID-19 and heighten his chances of lasting health problems or even death if he

14  contracts the virus again." Id. at 1:23-27.

15  *United States' Opposition*

16      The United States argues in opposition to Lee's motion that compassionate release is

17  unjustified because Lee remains a danger to the community and has failed to show that he suffers

18  from a serious medical condition that "substantially diminishes" his ability to "provide self-care"

19  and  "from which he [] is not expected to recover," Doc. 893 at 7:21-28, particularly since the

20  facility in which Lee is incarcerated now has low COVID-19 infection rates, id. at 6:15-20, and

21  protocols in place to manage COVID-19 cases effectively. Id. at 6:21-26. Further, the United

22  States argues that releasing inmates prophylactically based on the COVID-19 threat would result

23  in "inequitable treatment of inmates." Id. at 10:3-13. Finally, the United States concedes that Lee's

24  hypertension, obesity and kidney disease (a condition that Lee, for whatever reason, does not

25  address in his opening brief) can increase risk of severe illness from COVID-19, id. at 10:24-11:9,

26  but argues that the fact that Lee has already "contracted, and recovered from, COVID-19 with no

27  symptoms and no apparent complications" supports a finding that compassionate release is

28  unwarranted, notwithstanding Lee's other medical conditions. Id. at 11:10-14.

1 | *Defendant's Reply*

2   On reply, Lee restates his assertion that he could contract COVID-19 again because "both

3 [the World Health Organization] and the [Centers for Disease Control and Prevention] have

4 concluded that there is 'currently no evidence that people who have recovered [from] COVID-19

5 and have antibodies are protected from a second infection,' " Doc. 894 at 2:7-11, and argues that

6 the United States provides no evidence showing that the fact that Lee was asymptomatic when he

7 was infected with COVID-19 in May means he will be asymptomatic if he contracts COVID-19

8 again. Id. at 2:11-16.

9                           **LEGAL FRAMEWORK**

10   A court may generally "not modify a term of imprisonment once it has been imposed." 18

11 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 819 (2010). Criminal defendants may

12 request compassionate release or sentence modifications, however, for "extraordinary and

13 compelling reasons."  United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v.

14 Raia, 954 F.3d 594, 595 (3d Cir. 2020).

15   The statutory basis for compassionate release is in 18 U.S.C. § 3582(c)(1)(A)(i), which

16 states in relevant part:

17   The court may not modify a term of imprisonment once it has been imposed except
      that—
18         (1) in any case—

19         (A) the court, upon motion of the Director of the Bureau of Prisons, or
           upon motion of the defendant after the defendant has fully exhausted all
20         administrative rights to appeal a failure of the Bureau of Prisons to bring
           a motion on the defendant's behalf or the lapse of 30 days from the
21         receipt of such a request by the warden of the defendant's facility,
           whichever is earlier, may reduce the term of imprisonment (and may
22         impose a term of probation or supervised release with or without
           conditions that does not exceed the unserved portion of the original term
23         of imprisonment), after considering the factors set forth in section
           3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it
24         finds that—

25             (i) extraordinary and compelling reasons warrant such a reduction ....

26

27 18 U.S.C. § 3582(c)(1)(A)(i).

28   Before a defendant makes a request for compassionate release under 18 U.S.C. § 3582, the

3

1     defendant "must at least ask the [BOP] to do so on their behalf and give [the] BOP thirty days to

2     respond."  Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34.

3                                 **DISCUSSION**

4     **I.**     **Exhaustion of Administrative Remedies**

5         Lee has filed documents showing that he submitted a compassionate release request to the

6     warden of his facility, FCI Lompoc, no later than—and perhaps before—June 3, 2020 and that he

7     did not receive the response denying his request until July 24, 2020. Dkt. No. 885-3. The United

8     States, for its part, concedes that Lee has exhausted administrative remedies as required under 18

9     U.S.C. § 3582(c)(1)(A). Since the BOP deemed Lee's request sufficient to trigger an early release

10     determination and more than 30 days passed before the BOP provided a response, the Court will

11     address the merits of the motion. See 18 U.S.C. § 3582(c)(1)(A).

12     **II.**     **Extraordinary and Compelling Reasons for Early Release**

13         Substantively, this motion hinges on whether Lee has shown "extraordinary and

14     compelling reasons" for early release. 18 U.S.C. § 3582(c)(1)(A)(i).

15         Lee argues, in essence, that he is entitled to early release because he has an elevated risk of

16     COVID-19 infection and is likely to suffer severe symptoms—up to and including death—if he

17     contracts the disease, due to his various pre-existing medical conditions. Dkt. No. 885 at 1:23-2:1.

18     Further, he contends that BOP facilities—including the facility in which he is incarcerated—have

19     dangerously high rates of infection, id. at 2:2-25, and that, as a prisoner, he cannot realistically

20     take measures—such as social distancing—to protect himself. Id. at 8:3-7.

21         The Court notes—and accepts, for purposes of this motion—the evidence Lee presents

22     showing that hypertension and obesity can significantly increase susceptibility to COVID-19, and

23     also credits similar evidence, furnished by the Unites States, regarding the compromising effects

24     of kidney disease. The Court cannot look past the undisputed fact, however, that Lee has already

25     contracted and recovered from COVID-19 while in confinement.

26         Lee argues that the mere fact that he has already contracted and recovered from COVID-19

27     does not mean he will not contract it again and that the mere fact that he was asymptomatic the

28     first time does not mean he will not suffer severe—and even fatal—symptoms if he gets infected

again. Doc. No. 894 at 2:11-16. The Court cannot determine the risk of reinfection for COVID-19 survivors—let alone find that COVID-19 survivors are forevermore immune to infection—based on the record before it. The Court notes, however, that the sources cited by Lee state only that determinations as to the impact of prior infection on re-infection have not yet been made and that there is at least some evidence indicating that (as with other viruses) COVID-19 infection confers immunity (or, at least, enhanced resistance to infection).[1] Further, the record shows that Lee has not been reinfected in the five months or so since his initial infection, despite his continued confinement, and Lee provides no basis whatsoever for the Court to conclude that his next bout with COVID-19—should that come to pass—would be worse than his first.

It also appears that, while infection rates at FCI Lompoc were high earlier this year, they have since dropped sharply and now quite low. Indeed, as of October 23, 2020, zero inmates—and just three staff—at FCI Lompoc had COVID-19 infections. See https://www.bop.gov/coronavirus/ (last checked October 26, 2020). Further, it appears that Lee received adequate care when he was infected with COVID-19 first time, and that FCI Lompoc currently has sound measures in place—including access to off-site intensive care—to deal with COVID-19 cases as they occur. Dkt. No. 893 at 6:21-26.

In light of these facts, the Court finds that Lee has failed to show "extraordinary and compelling reasons" for early release and a reduction in sentence. See 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Kim, 2020 WL 3213312, at *3 (D. Haw. June 15, 2020). If anything, between his prior successful bout with COVID-19 and the exceptionally low infection rate at FCI Lompoc, the record appears to indicate that Lee is at lower risk than the typical federal

---

[1] See, e.g., Dr. Robert D. Kirkcaldy, et al., "COVID-19, Postinfection Immunity Limited Evidence, Many Remaining Questions," J. of the Am. Medical Ass'n, at 2246, available at https://jamanetwork.com/journals/jama/fullarticle/2766097 ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last visited October 23, 2020); Dr. Francis Collins, "NIH Director's Blog: Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies," available at https://directorsblog.nih.gov/ 2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/ ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last visited October 23, 2020).

inmates of a dangerous COVID-19 event. The Court will therefore deny the motion.

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate release (Doc. No. 885) is DENIED.

IT IS SO ORDERED.

Dated:   October 28, 2020   

_____

SENIOR  DISTRICT  JUDGE